IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                    Cr. No. 4:24-mj-297

**IN THE MATTER OF THE EXTRADITION
OF ISAC ALEJANDRO CALDERON**

### OPPOSED MOTION FOR DISOVERY, BOND AND TO DISMISS EXTRADITION COMPLAINT

Mr. Isac Alejandro Calderon ("Isac") moves the court for an order (1) compelling specific discovery, (2) to release him on bond pending extradition, and (3) to dismiss the complaint seeking his extradition to the United Kingdom of Britain and Northern Ireland ("United Kingdom").

The Court should compel the government to produce the dash cam video and Isac's recorded interview. He should be released on bond pending extradition. He missed his court date because he is indigent, not because he is fleeing justice. He is not a flight risk, has strong ties to Houston and has military obligations. He and his parents have communicated with members of law enforcement and the press since the car accident. The complaint must be dismissed because the charging document has not been produced and the government cannot demonstrate probable cause that Isac's car accident is punishable by over one year in the United States.

## I. FACTUAL BACKGROUND

Isac is a twenty-three-year-old citizen of the United States. He was born and raised in Houston, Texas. His parents and brother live in Houston. His younger sister, who serves in the Marines, currently resides in Hawaii. He has lived with his parents for most of his life.

Isac has been in the Texas Army National Guard since 2018. His current position is geospatial imagery analyst and his rank is E4. He has been employed in the food industry, at Golden Coral, Zaxby's and Raising Cane's. Isac graduated high school in 2019. He attended some college at the University of Houston and lived in a dorm for several months in 2020. He also worked as a security guard in Houston in 2022. He has no criminal history.

In March 2023, Isac traveled to the United Kingdom for private employment with Torden LLC translating Spanish language documents. His employer paid for his flight to the United Kingdom. His work contract was for one year and was scheduled to end in March 2024. As part of his contract, his employer promised to pay for his return flight to the United States.

Isac had a Texas driver's license and also obtained an international driver's permit online. From March to July 2023, he drove a rental vehicle to his full-time job in the United Kingdom. The rental vehicle was paid for by his employer for the first few months of his contract.

On or about July 25, 2023, Isac purchased a used Honda Accord. On July 31, 2023, while driving that vehicle, he caused a traffic accident. It was a head-on collision with a vehicle driven by Elizabeth Donowho (Ms. Donowho), a fifty-six-year-old woman.

Ms. Donowho briefly lost consciousness and suffered two broken ankles and fractures to her sternum (breastbone) and hand. She was unable to walk for six weeks, and her mobility remains poor. Isac lost consciousness, and suffered a concussion and a broken humerus (upper arm). After the accident, he suffered tinnitus in his right ear, sensory nerve damage in the left side of his body, double vision, and memory loss.

At the time of the accident, Isac was not intoxicated or impaired. He did not suffer from any medical conditions that would have affected his driving. The accident occurred during daylight hours. The weather was dry and there were no cars immediately in front of or behind Ms. Donowho.

A dash cam mounted to another vehicle captured a video of the accident and some of Isac's driving prior to the accident. A meticulous summary of that video has been drafted by a police officer in the United Kingdom in connection with this extradition on June 13, 2024, and has been filed as evidence in this matter. *Doc. 12-1*. This summary states that the dash cam video was listed as an exhibit (NH/1), although the dash cam video has not been submitted as an exhibit in this matter. *Doc 12-1, page*

*5*. The video has not been produced to defense counsel and the government has indicated to defense counsel that it does not intend to request the dash cam video.

The driver of the vehicle with the dash cam opined that Isac was driving 60 miles per hour in a 50 mile per hour zone. That driver also stated that Isac "lost control" of his car before he hit another vehicle. *Doc. 1, page 3*. Another witness opined that Isac was driving 70 miles per hour and stated that Isac nearly avoided a collision with an oncoming vehicle.

On August 15, 2023, Isac was interviewed for twenty-eight minutes at the Hereford Police Station. The interview was recorded. Defense counsel has not received a copy of Isac's recorded interview.

A rough transcript of the interview was produced and was filed in this matter. *Doc. 1, pages 44 - 55*. Isac admitted to causing the car accident. He estimated that his speed was 50 to 55 miles per hour. He was unsure what a solid white line means. He was shown the dash cam video. He was asked if his driving was dangerous. He stated that he "wouldn't have called [his driving] dangerous," but, after watching the video, he had "no other way to describe it" and called his driving "not safe." Isac asked about the well-being of Ms. Donowho. At the conclusion of the interview, he was informed that he would be reported for the offense of "causing serious injury by dangerous driving." He stated that he planned to remain in the United Kingdom until March 2024, which is when his work contract was scheduled to end.

Isac's was unable to return to his employment for medical reasons for about one month after the accident. His employment contract was terminated early. After the accident, he missed work while he recovered from the accident. His memory was affected by the concussion that he suffered in the accident. After the accident, he did not obtain another vehicle. By November 2023, he was behind on rent and unable to find work. He did not have money for basic living expenses. He called his father and asked for money. His father was unable to financially sustain Isac's life in the United Kingdom pending his court proceedings.

Isac was never arrested in the United Kingdom. He never appeared before a judge. He was not required to post any bail. The court notified Isac of his court date by a "postal requisition" sent in the mail to his address. *Doc. 11-2, page 2*. Unlike a traffic ticket in the United States, Isac did not even sign a document promising to appear in court.

Prior to leaving the United Kingdom, Isac called the Hereford Magistrates' Court to advise of his financial situation. He requested assistance from the Court to appear at his court hearing. The court personnel informed him that his financial situation was not their responsibility. Facing impending homelessness and needing medical treatment, Isac requested his employer to book his return flight to the United States.



After returning to the United States, Isac returned to reside with his parents in Humble, Texas. Members of the press visited his parents and confirmed Isac's residence in December 2023.[1] A picture of his parent's home was published online in a news article.[2] (pictured to the right).

Isac spoke to an FBI agent on the phone. The FBI agent gave Isac the contact information of a law enforcement officer (inspector) in the United Kingdom. On January 3, 2024, Isac emailed the inspector in the United Kingdom to inquire about his case. *Exhibit 1*. He informed the inspector that he was still seeking medical treatment for his arm in the United States. He did not receive a reply from the inspector.

Isac and his parents sought legal counsel in the United States regarding his options, but they were financially unable to afford retaining an attorney.

On July 1, 2024, a complaint was filed in the Southern District of Texas by the government requesting a warrant for the arrest of Isac so that evidence supporting his

---

[1] Lucas Cumiskey, *US man who left UK after nurse injured in crash reportedly now in Texas*, Independent, December 13, 2023, https://www.independent.co.uk/news/uk/west-mercia-police-sky-news-malvern-worcestershire-herefordshire-b2463398.html (last visited July 23, 2024).
[2] Lisa Dowd, *Sky News tracks down US driver who fled UK after crash left nurse unable to walk*, December 13, 2023, https://news.sky.com/story/sky-news-tracks-down-us-driver-who-fled-uk-after-crash-left-nurse-unable-to-walk-13029390 (last visited July 23, 2024).

extradition may be heard. Isac was arrested on July 14, 2024, during his annual two-week training for the National Guard.

## II. LEGAL STANDARDS.

### A. DISCOVERY IN EXTRADITION PROCEEDINGS

Discovery in extradition proceedings is "discretionary" and "narrow in scope." § 22:2397. *Discovery in extradition proceedings, 9B Fed. Proc., L. Ed. § 22:2397*. The proceedings should not be "converted into a dress rehearsal for trial." *Id.* The Court should consider whether the contested issue "would be appreciably advanced by the requested discovery." *Id.*

### B. RIGHT TO BOND

There is a right to bond in extradition cases. The Fifth Circuit has emphasized that district courts should grant bond to persons under extradition proceedings if that person shows they are not a flight risk or community danger and that "special circumstances" exist. *See In re Extradition of Russel*, 805 F.2d 1215, 1216 (5th Cir. 1986); *see also Wright* v. *Henkel*, 190 U.S. 40, 63 (1903) (refusing to find that courts "may not in any case, and whatever the special circumstances, extend the relief" of bond in extradition cases). The federal extradition statute does not specifically discuss bond, and federal court decision are inconsistent regarding the applicable standard. *See, e.g.*, *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 472–74 (S.D. Tex. 2010).

Federal courts have not clearly defined the phrase "special circumstances." District courts have identified special circumstances in various situations, including when there is a high probability of success. *Salerno* v. *United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see also In re Extradition of Santos*, 473 F. Supp. 2d 1030 (C.D. Cal. 2006). But the "list of potential special circumstances is not limited to those previously recognized in published decisions," and the district court judge has discretion to decide what circumstances justify release on bond. *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 735 (W.D. La. 1999) (citing *Beaulieu* v. *Hartigan*, 554 F.2d 1, 1 (1st Cir. 1977)).

The Court may grant bond when special circumstances are present "during the pre-certification stage of extradition" as well as during the "post-certification stages of extradition" *In Wroclawski* v. *U.S.*, 634 F. Supp. 2d 1003 (D. Ariz. 2009) (granting bail pending extradition to Poland for man faced with bank fraud and theft charges after noting community connections, and emphasizing government's failure to address this factor or introduce opposing evidence).

### C. EXTRADITION REQUIRMENTS

To show extradition is appropriate, the government must demonstrate, amongst other things, that (1) all treaty requirements are satisfied; (2) there is probable cause to believe Isac committed the alleged offense; and (3) the court has jurisdiction over the extraditee. *See generally* 18 U.S.C. § 3184. The government must provide evidence that

8

is "of sufficient weight" to support probable cause. *In re Extradition of Cervantes Valles*, 268 F. Supp. 2d 758, 773–75 (S.D. Tex. 2003).

The Court may decline to make a probable cause determination when the government fails to make evidence available at extradition proceedings. *See In re Ribaudo*, No. 00 CRIM.MISC.1PG, 2004 WL 213021, at *6 (S.D.N.Y. 2004) (finding no probable cause warranting extradition to Italy when the government based its request exclusively on Italian court filings and did not provide any of the underlying evidence submitted to the foreign court); *see also In Matter of Extradition of Ernst*, 1998 WL 395267, at *10 (S.D.N.Y. July 14, 1998) (finding no probable cause justifying extradition to Switzerland for the same reason).

Dual criminality is a requirement for extradition under Article 2, Section 1 of the treaty between the United States and the United Kingdom. To be extradited, Isac must be accused of conduct that is "punishable in both countries by at least one year's imprisonment." *United States v. Kin-Hong*, 110 F.3d 103, 114 (1st Cir. 1997). The purpose is "to ensure that extradition is granted only for crimes that are regarded as serious in both countries." *Id.*

### III.   ARGUMENT.

The Court should compel the production of the dash cam video and Isac's recorded interview as crucial best "original" evidence.

9

He is not a flight risk and presents special circumstances that warrant his release pending extradition proceedings.

The Court should decline to certify Isac's extradition to the United Kingdom and dismiss the complaint because (1) the United Kingdom's charging document has not been submitted, and (2) there is no probable cause to support a Texas aggravated assault charge based on the traffic accident in this case.

### A. THE DASH CAM VIDEO AND ISAC'S RECORDED STATEMENTS SHOULD BE PRODUCED OR THE TRANSCRIPTS SHOULD BE EXCLUDED

The Court should compel the government to produce the best evidence that will assist the court in making the necessary probable cause determination in this matter. Although the rules of evidence do not apply, Federal Rules of Evidence 1001 and 1004, Federal Rules of Criminal Procedure Rule 16, and Articles 8 and 10 of the treaty are relevant to this discovery request.

As defined in Rules 1001 and 1004, the dash cam is the "original" "recording" and the best evidence that will resolve "a controlling issue:" whether Isac's driving behavior met the standard for Texas aggravated assault. Instead, the government has submitted a detailed narration with additional commentary from a biased witness: a law enforcement officer from the state that is requesting extradition. Without the video, the Court will be unable to make an "independent determination" of the best evidence regarding a contested issue. *In Matter of Extradition of Ernst*, No. 97 CRIM.MISC.1

PG.22, 1998 WL 395267, at *10 (S.D.N.Y. July 14, 1998) (District Court refused to accept the statements of "fact" provided in a Zurich Supreme Court's written opinion because it contained conclusions based on exhibits that were not provided by the government).

Isac is currently at a procedural disadvantage. The government's witness was able to view the dash cam video and submitted a detailed written summary from his perspective. That witness will not be confronted at the extradition hearing. Isac's own memory loss from the day of the accident makes this disadvantage more acute.

Similarly, the government has submitted a rough written transcript of Isac's recorded interview with law enforcement. Defense counsel has not been provided with a copy of the recorded interview. Federal Rules of Criminal Procedure Rule 16, if it applied, would require the government to provide Isac with a copy of his own statement. In this statement, Isac appears to express his opinion that his driving was safe. However, after watching parts of the dash cam video while being questioned, Isac agreed that his driving was dangerous. The Court's assessment of the dash cam video and Isac's statement are likely to affect the Court's decision on probable cause. The original recorded evidence is crucial for this evaluation.

This discovery request is narrow. Isac is not asking for a trial in the United States. Multiple hearsay written statements have been submitted by the government and will not be objected to. Isac is not requesting sensitive information as discussed in Article 8

of the treaty. Article 10 permits the United States to request additional evidence from the United Kingdom. Isac's request does not unduly burden the United Kingdom, the United States or the witnesses in this case. Due process requires the government to produce the requested recordings.

The Court should compel the government to produce the dash cam and Isac's recorded statement to defense counsel. Otherwise, the Court should exclude the transcripts provided by the government: Doc. 1, pages 45 – 55 and Doc. 12-1, pages 7 – 10.

### B. ISAC IS NOT A FLIGHT RISK AND HE PRESENTS SPECIAL CIRCUMSTANCES

Isac is not a flight risk while extradition proceedings are pending. He has strong ties to Houston, Texas. He has military obligations. He has substantial employment history for his age and no criminal history. His parents are supportive. His whereabouts have been known and he has communicated with law enforcement officers. His failure to attend his court hearing in the United Kingdom is connected to his financial situation, not a plan to flee justice.

His case presents special circumstances. His charge is based on a traffic accident, not an intentional criminal act. He was injured and suffered physically and financially from the accident. He is accused of not being "careful" under the driving laws of the United Kingdom. As argued below, the extradition request is defective and his conduct is not punishable in the United States by one year or more, as required by the treaty.

These circumstances are special and warrant his release on bond pending extradition proceedings.

### C. TREATY REQUIREMENTS HAVE NOT BEEN MET

#### i. Without an Indictment, The Extradition Request Must be Denied

Under Article 8, Section 3(b), a request for extradition "shall" be supported by "a copy of the charging document." *Doc. 1, page 19*. The complaint only includes a copy of the warrant of arrest issued by a District Judge (not a High Court Judge) in a Magistrate's Court. *Doc. 1, page 41*.

Under the United Kingdom's traffic laws, an offense of causing serious injury by dangerous driving is "triable either way." *Doc. 11-1, page 67*. If the offense is charged "summarily" in a Magistrates' Court, it is only punishable by up to 12 months, which is less than the one year required by the treaty. *Exhibit 2 - Legal Aid, Sentencing and Punishment of Offenders Act 2012 (c. 10), ss. 143(5)*. If Isac is indicted, the same offense is punishable by up to five years. *Id.*

Isac was initially sent a letter advising him to attend Hereford Magistrates' Court on November 29, 2023. *Doc. 11-2, page 2*. On November 21, 2023, he was sent notice that he must attend Kidderminister Magistrates' Court on December 1, 2023. It is not clear if he has been indicted for the alleged offense. The charging mechanism may not affect this Court's certification decision because Article 2, Section 1 of the extradition treaty only requires that the alleged conduct be punishable by one year or

13

more. However, Article 8, Section 3 requires that Isac's charging document be produced. Because this basic treaty requirement has not been fulfilled, this Court must not certify Isac's extradition at this time.

### ii. The Dual Criminality Requirement is not Met

Isac's alleged conduct is not punishable by one year or more in the United States, as required by Article 2, Section 1 of the treaty. Driving above the speed limit and crossing a solid white line to pass a vehicle is not taking a substantial and unjustifiable risk that amounts to a gross deviation from the standard of care of an ordinary driver in Isac's circumstances.

At the extradition hearing, the government must provide evidence supporting a finding of probable cause that Isac committed a crime that is punishable by more than 12 months in both the United Kingdom and the United States. *See* 18 U.S.C. § 3184.

When determining whether probable cause exists to support the government's extradition request, the magistrate "must judge for himself the persuasiveness of the facts relied upon by a complaining officer to show probable cause." *Giordenello* v. *United States*, 357 U.S. 480, 486 (1958). Probable cause finding "cannot be a mere ratification of the conclusions of others." *Illinois* v. *Gates*, 462 U.S. 213, 239 (1983).

The offense charged in the United Kingdom requires a standard that is lower than reckless driving in Texas. To demonstrate probable cause that Isac committed the offense of causing serious bodily injury by dangerous driving, the government must

only demonstrate that, objectively, his driving did not meet the standard to be "expected of a competent and careful driver" and "it would be obvious to a competent and careful driver that driving in that way would be dangerous." *Section 2A of the Road Traffic Offense Act 1988*. For example, a defendant who crashed his motorcycle after looking back while driving at twice the speed limit and carrying a minor passenger who was not wearing a helmet is considered dangerous driving in the United Kingdom. *R. v Holder (Kai Nathanial), [2023] 4 W.L.R. 14 (2023) (UK)*.

In Texas, reckless driving, defined as driving a vehicle "in wilful or wanton disregard for the safety of persons or property," is a misdemeanor offense punishable by up to 30 days in jail. *Tex. Trans. Code § 545.401*. "[R]eckless driving is a lesser included offense of aggravated assault. *Benge v. State*, 94 S.W.3d 31, 36 (Tex. App. 2002)

Texas aggravated assault by causing serious bodily injury, which is punishable by up to twenty years in prison, requires proof of intentional, knowing, or reckless behavior. *Tex. Pen. Code § 22.02(a)(1) and § 22.01(a)(1)*. For an aggravated assault conviction, reckless behavior requires proof that a person consciously disregarded a "a substantial and unjustifiable risk" and that disregard "constitute[d] a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Simms v. State*, 629 S.W.3d 218, 223 (Tex. Crim. App. 2021) (holding that a defendant who was speeding and claimed to doze off before veering out of his lane and causing a head-on collision was entitled

15

to a jury instruction for a deadly conduct offense which has a lower mens rea requirement).

Dangerous driving behavior alone may not qualify for a Texas aggravated assault conviction, but intoxication and dangerous driving behavior may be sufficient. *Gill v. State,* 981 S.W.2d 517, 519 (Tex. App. 1998) ("[S]peeding is not necessarily reckless conduct. Speeding while intoxicated, however, is reckless conduct.") Texas courts also look at whether a defendant, who was speeding, attempted to avoid a car accident by braking or swerving to determine if the defendant had the mens rea required for reckless behavior. *Ashorali v. State*, No. 05-06-01476-CR, 2008 WL 726202, at *7 (Tex. App. Mar. 19, 2008); *Benge v. State*, 94 S.W.3d 31, 36 (Tex. App. 2002) (A defendant who did not intentionally hit a victim with her vehicle yet "consciously disregarded the possibility she might be unable to stop before striking" a victim could be guilty of reckless driving, and not aggravated assault.)

Isac's car accident was not a gross deviation from the standard of care of an ordinary driver in his situation. He did not take a substantial and unjustifiable risk. The road was dry and it was daylight. His speed was probably above the speed limit, but not substantially so. He was not impaired. It is unclear what his speed was at the time of the collision. It is unclear what he did to avoid the collision. One witness said that Isac "lost control" of the vehicle before the collision. This may amount to careless or even dangerous driving under the United Kingdom's legal standard, like the defendant in

*Holder*. However, it does not amount to reckless driving or aggravated assault under Texas's legal standard for a felony offense.

## D. CONCLUSION

The Court should compel the government to produce the dash cam video and Isac's interview. The court has discretion over discovery issues and the treaty contemplates requests for additional information. The recordings are relevant and necessary for the Court's independent probable cause analysis and for Isac's right to due process in his extradition proceeding.

Isac is indigent, but he is not a flight risk. His whereabouts have been known to law enforcement and the public. He should be released on bail pending extradition proceedings. A deficient request for extradition for a car accident is a special circumstance.

The Court should not rubber-stamp this defective extradition request. The government has not provided a charging document or proven probable cause that Isac's conduct is punishable by one year or more in the United States, as required by the treaty. The Court should not certify his extradition and should dismiss the complaint.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas No. 3233
Texas State Bar No. 14003750
By /s/ Amr A. Ahmed

>AMR A. AHMED
>Assistant Federal Public Defender
>Southern District of Texas No. 3088803
>Virginia State Bar No. 81787
>440 Louisiana, Suite 1350
>Houston, TX 77002-1056
>Telephone:  713.718.4600
>Fax:             713.718.4610

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Assistant United States Attorney Jay Hileman and determined that the United States is unopposed to this motion.

>By /s/ Amr A. Ahmed
>AMR A. AHMED

## CERTIFICATE OF SERVICE

I certify that on July 24, 2024, a copy of the foregoing motion was served by Notification of Electronic Filing and was delivered by email to Assistant United States Attorney Jay Hileman.

>By /s/ Amr A. Ahmed
>AMR A. AHMED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.                                                                                    Cr. No. 4:24-mj-297

IN THE MATTER OF THE EXTRADITION
OF ISAC ALEJANDRO CALDERON

### ORDER

The Court has considered the Mr. Calderon's Opposed Motion for Discovery, Bond and to Dismiss the Extradition Complaint. The Court hereby:

GRANTS / DENIES the motion to compel production of the dash cam video.

GRANTS / DENIES the motion to compel production of Isac's recorded statement.

GRANTS / DENIES the motion to release Isac on bond pending extradition proceedings.

GRANTS / DENIES the motion to dismiss the complaint.

SIGNED in Houston, Texas, on the _____ day of _____ 2024.

_____
U.S. MAGISTRATE JUDGE PETER BRAY